No. 2014-1376

# In the
# United States Court of Appeals
# for the Federal Circuit

VOLCANO CORPORATION,

*Plaintiff-Appellant,*

v.

ST. JUDE MEDICAL, CARDIOVASCULAR AND ABLATION TECHNOLOGIES DIVISION, INC.; ST. JUDE MEDICAL, CARDIOLOGY DIVISION, INC.; ST. JUDE MEDICAL, U.S. DIVISION; ST. JUDE MEDICAL S.C., INC.; AND ST. JUDE MEDICAL SYSTEMS AB,

*Defendants-Appellees.*

Appeal From The United States District Court For The District Of Delaware In Case No. 13-CV-687-RGA, The Honorable Richard G. Andrews.

## RESPONSE BRIEF FOR DEFENDANTS-APPELLEES

Stuart E. Pollack
Nika Aldrich
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500

John Allcock
Stanley J. Panikowski
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
(619) 699-2700

*Attorneys for Defendants-Appellees*

June 9, 2014

# CERTIFICATE OF INTEREST

## VOLCANO CORPORATION v. ST. JUDE MEDICAL

## No. 14-1376

Counsel for Defendants-Appellees certifies the following:

1.    The full name of every party or amicus represented by me is:

    St. Jude Medical, Cardiology Division, Inc.,
    St. Jude Medical Systems AB,
    St. Jude Medical S.C., Inc.[1]

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    St. Jude Medical, Inc.,
    SJM International, Inc.,
    St. Jude Medical International Holding S.a.r.L.,
    St. Jude Medical Luxembourg Holding S.a.r.L.,
    St. Jude Medical Luxembourg S.a.r.L.,
    St. Jude Medical Holdings B.V.,
    St. Jude Medical AB.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

---

[1] St. Jude Medical, Cardiovascular and Ablation Technologies Division, Inc. and St. Jude Medical, U.S. Division are not, and were not, legal entities. In any event, DLA Piper LLP (US) represents all Defendants-Appellees.

DLA Piper LLP (US):  John Allcock, Drew M. Wintringham, Stuart E. Pollack, Stanley J. Panikowski, Tamar Y. Duvdevani, Marc E. Miller, Robert J. Czarnecki, Jr., Nicholas (Nika) F. Aldrich.

Richards, Layton & Finger, P.A.:  Steven J. Fineman, Jason J. Rawnsley.

Dated:  June 9, 2014                        Respectfully submitted,

                                  */s/ Stuart E. Pollack*        
                                  Stuart E. Pollack
                                  DLA Piper LLP (US)
                                  1251 Avenue of the Americas
                                  New York, NY 10020-1104
                                  Telephone: (212) 335-4964
                                  Facsimile:  (212) 884-8464

                                  *Attorneys for Defendants-Appellees*

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ................................................................1

STATEMENT OF THE ISSUES....................................................................1

PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF THE CASE SETTING OUT THE FACTS RELEVANT
TO THE ISSUES ............................................................................3

    A.    The Origin Of "Flexible Element" — Volcano's Prior,
Unsuccessful Case Against St. Jude......................................3

    B.    Volcano Described and Claimed A Coil Throughout the Patent
Family.........................................................................5

    C.    The District Court Construes "Flexible Element" and Grants
Summary Judgment.........................................................8

    D.    The Written Description of the Invention ...........................10

    E.    The Prosecution History.................................................12

SUMMARY OF THE ARGUMENT ...........................................................15

ARGUMENT .......................................................................................18

    A.    The District Court Correctly Construed "Flexible Element"—A
Term Having No Plain Meaning in the Relevant Art—By Using
Intrinsic Evidence..........................................................18

        1.    Where a Term Has No Plain and Ordinary Meaning in
the Art, Its Meaning Must Be Found in the Intrinsic
Record ...............................................................18

        2.    "Flexible Element" Has No Plain and Ordinary Meaning
in the Guidewire or Medical Device Art ....................22

            a.    This Court does not define multi-word phrases
with no meaning in the art simply by combining
dictionary definitions....................................23

            b.    This Court has repeatedly recognized the
usefulness of expert opinion regarding whether a
term has a plain and ordinary meaning..........26

# TABLE OF CONTENTS
## (continued)

3. The Only Meaning for "Flexible Element" Consistent with the Written Description and Prosecution History is "Coil," ...................................................................29

    a. The written description describes only embodiments having a coil and even describes a coil as part of the "present invention" ...........................29

    b. The prosecution history further demonstrates that a "flexible element" is a coil ............................................33

4. Claim Differentiation Does Not Redefine "Flexible Element"...................................................................37

5. A Restriction Requirement is Not a Judgment Regarding the Meaning of Claim Terms that Affects a Term's Construction ...............................................................43

B. Alternatively, "Flexible Element" is a Means-Plus-Function Term Governed by § 112(f), and Corresponds to the Written Description's Coil.................................................................45

1. Claim Terms Must Recite Specific Structures.........................46

2. "Flexible Element" is Subject to § 112(f) Because the Claims Do Not Recite Enough Structure ................................47

3. "Flexible Element" is a not a Term Specially Defined To Include a Specific Structure Described in the Written Description ...........................................................................52

4. A Coil is the Sole Corresponding Structure in the Written Description .............................................................54

CONCLUSION .......................................................................54

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3M Innovative Props. Co. v. Tredegar Corp.*,
    725 F.3d 1315 (Fed. Cir. 2013) .........................................................50

*800 Adept, Inc. v. Murex Secs., Ltd.*,
    539 F.3d 1354 (Fed. Cir. 2008) .........................................................41

*Apple Inc. v. Motorola, Inc.*,
    --F.3d--, 2014 WL 1646435 (Fed. Cir. Apr. 25, 2014) .....................53

*Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*,
    288 F. App'x 697 (Fed. Cir. 2008) ...................................28, 49, 50, 51

*Bailey v. Dart Container Corp. of Michigan*,
    292 F.3d 1360 (Fed. Cir. 2002) .........................................................27

*Bayer CropScience AG v. Dow AgroSciences LLC*,
    728 F.3d 1324 (Fed. Cir. 2013) .............................................31, 32, 41

*Broadcom Corp. v. Qualcomm Inc.*,
    543 F.3d 683 (Fed. Cir. 2008) ...........................................................41

*Colorquick, LLC v. Eastman Kodak Co.*,
    2008 WL 5771324 (E.D. Tex. June 25, 2008) ...................................44

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
    438 F.3d 1374 (Fed. Cir. 2006) .............................................37, 42, 43

*Edwards Lifesciences LLC v. Cook Inc.*,
    582 F.3d 1322 (Fed. Cir. 2009) .................................................31, 40

*FMC Corp. v. Hennessy Indus., Inc.*,
    836 F.2d 521 (Fed. Cir. 1987) ...........................................................27

*Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l, LLC*,
    2007 WL 4105832 (N.D. Cal. Nov. 16, 2007) ..................................25

*Goldenberg v. Cytogen, Inc.*,
    373 F.3d 1158 (Fed. Cir. 2004) .................................................16, 33

*Heuft Systemtechnik GmbH v. Indus. Dynamics Co.*,
282 F. App'x 836 (Fed. Cir. 2008) ....................................................35

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
452 F.3d 1312 (Fed. Cir. 2006) .................................................32, 44

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*,
488 F.3d 982 (Fed. Cir. 2007) .......................................................20

*Hormone Research Found. v. Genentech, Inc.*,
904 F.2d 1558 (Fed. Cir. 1990) .....................................................42

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
558 F.3d 1368 (Fed. Cir. 2009) .....................................................38

*ICU Med., Inc. v. B. Braun Med., Inc.*,
344 F. Supp. 2d 663 (N.D. Cal. 2004).............................................24

*Intamin Ltd. v. Magnetar Techs. Corp.*,
483 F.3d 1328 (Fed. Cir. 2007) .....................................................41

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.*,
649 F.3d 1350 (Fed. Cir. 2011) .................................................52, 53

*Irdeto Access, Inc. v. Echostar Satellite Corp.*,
383 F.3d 1295 (Fed. Cir. 2004) .................................................21, 22

*Laitram Corp. v. Rexnord, Inc.*,
939 F.2d 1533 (Fed. Cir. 1991) .....................................................52

*Marine Polymer Techs., Inc. v. HemCon, Inc.*,
672 F.3d 1350 (Fed. Cir. 2012) .................................................40, 41

*Markman v. Westview Instrs., Inc.*,
517 U.S. 370 (1996)....................................................................46

*Mas-Hamilton Group v. LaGard, Inc.*,
156 F.3d 1206 (Fed. Cir. 1998) ...............................................passim

*Mass. Inst. of Tech. v. Abacus Software*,
462 F.3d 1344 (Fed. Cir. 2006) ...............................................passim

*Network Commerce, Inc. v. Microsoft Corp.*,
    422 F.3d 1353 (Fed. Cir. 2005) ...................................................................19, 23

*Noah Sys., Inc. v. Intuit Inc.*,
    675 F.3d 1302 (Fed. Cir. 2012) ..........................................................................47

*On-Line Tech. v. Bodenseewerk Perkin-Elmer*,
    386 F.3d 1133 (Fed. Cir. 2004) ...................................................................16, 21

*Ormco Corp. v. Align Tech., Inc.*,
    498 F.3d 1307 (Fed. Cir. 2007) ..........................................................................36

*Pall Corp. v. Micron Separations, Inc.*,
    66 F.3d 1211 (Fed. Cir. 1995) ............................................................................52

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ...................................................33, 41

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    711 F.3d 1348 (Fed. Cir. 2013) ..................................................................passim

*Realtime Data LLC v. Morgan Stanley*,
    -- F. App'x --, 2014 WL 278757 (Fed. Cir. Jan. 27, 2014) ...............................36

*Shire Development, LLC v. Watson Pharmaceuticals, Inc.*,
    -- F.3d --, 2014 WL 1258136 (Fed. Cir. Mar. 28, 2014) ..................................35

*Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*,
    731 F.3d 1271 (Fed. Cir. 2013) ...........................................................20, 32, 33

*Tempo Lighting, Inc. v. Tivoli, LLC*,
    742 F.3d 973 (Fed. Cir. 2014) ............................................................................35

*Thorner v. Sony Comp. Ent. Am. LLC*,
    669 F.3d 1362, 1367 (Fed. Cir. 2012) ...............................................................22

*Uship Intellectual Properties, LLC v. U.S.*,
    714 F.3d 1311 (Fed. Cir. 2013) ..........................................................................43

*Vanderlande Indus. Nederland BV v. ITC*,
    366 F.3d 1311 (Fed. Cir. 2004) ..................................................................passim

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007) ...........................................................31

*Welker Bearing Co. v. PHD, Inc.*,
    550 F.3d 1090 (Fed. Cir. 2008) ................................................42, 49

## STATUTES

35 U.S.C. § 112(a) ...........................................................................31

35 U.S.C. § 112(b). ..........................................................................46

35 U.S.C. § 112(f) ......................................................................passim

## STATEMENT OF RELATED CASES

No appeal in or from this action was previously pending before this Court or any other appellate court.  A pending related case, *St. Jude Medical, Cardiology Division, Inc. v. Volcano Corp.*, No. 10-CV-631-RGA (D. Del.), concerns the parent and grandparent patents to the two asserted patents.

## STATEMENT OF THE ISSUES

1.    Where the unrebutted evidence shows a two-word phrase has no plain and ordinary meaning in the art, did the district court correctly use the intrinsic evidence instead of general dictionary definitions of individual words to construe the phrase?

2.    Alternatively, should "flexible element" be treated under § 112(f) where the term refers to no definite structure known in the art and the claims do not recite enough structure?

## PRELIMINARY STATEMENT

Volcano's entire argument depends on a false premise.  The premise is that the term "flexible element" had a plain and ordinary meaning to one skilled in the relevant art at the time of the purported invention.  But the evidence in this case confirms that "flexible element" had no such plain and ordinary meaning.  St. Jude's expert explained this in detail, and Volcano offered no contradictory evidence.  In these circumstances, this Court's precedent requires a careful analysis

- 1 -

of the intrinsic evidence to discern how a skilled artisan would have understood "flexible element" in the context of the patents.

Here, the written description makes clear that "flexible element" means "coil." The term "flexible element" appears nowhere in the written description. The only solution Volcano ever had for providing flexibility just proximal to its sensor housing was to use a coil. A coil is the only structure disclosed for this purpose in the written description of Volcano's asserted patents. In fact, it is the only structure Volcano ever claimed in the prior 17 years of prosecution, during which five patents having coil claims issued. Nothing in the written description supports the notion that a "flexible element" can be anything other than a "coil." And contrary to Volcano's efforts to run from the written description, this Court has repeatedly affirmed that it is the single best, and usually dispositive, guide to the meaning of a disputed term.

The prosecution history likewise confirms that "flexible element" means "coil." In prosecuting the ancestors of the asserted patents, Volcano repeatedly defined its invention as limited to coils. Volcano also relied on the use of coils to overcome prior art rejections. This confirms what the written description reveals: that one of skill in the art would have understood "flexible element"—a term that Volcano freshly minted for use in the asserted patents—to mean "coil."

- 2 -

Once the falsity of Volcano's premise is exposed, its whole argument crumbles.  The line of cases on which it relies—limiting the relevance of the written description and file history to lexicography and disavowal—applies only where a claim term has an accepted plain and ordinary meaning in the art.  Because "flexible element" has no accepted plain and ordinary meaning in the relevant art, this line of cases does not apply here.  Rather, this case is controlled by the vast body of law that looks to the written description and prosecution history for guidance when a term lacks a pre-existing ordinary meaning in the art.

Volcano coined the term "flexible element" to try to overcome its litigation failure on an ancestor patent that said "coil."  But it is well established that one cannot breathe plain and ordinary meaning into an artificial phrase simply because each component word may have a discernible dictionary definition on its own.  The district court's judgment should be affirmed.

## STATEMENT OF THE CASE SETTING OUT THE FACTS RELEVANT TO THE ISSUES

### A.    The Origin Of "Flexible Element" — Volcano's Prior, Unsuccessful Case Against St. Jude

The background to the two patents at issue in this appeal—U.S. Patent Nos. 8,419,647 and 8,419,648—and the story of how the made-up term "flexible element" was added to them, are instructive.  These patents are continuations of U.S. Patent No. 6,976,965.  Volcano previously sued St. Jude on the '965 patent.

The '965 patent claims a pressure sensing guidewire with a sensor housing flanked by a distal coil and a proximal coil:



St. Jude's current products do not have a proximal coil because St. Jude improved its guidewires with its own patented design involving an insulating plastic tube.  (A1600-07.)  By the time of trial, Volcano had dropped its literal-infringement case and relied solely on the doctrine of equivalents to try to prove that St. Jude's plastic tube was the equivalent of the claimed proximal coil.  In October 2012, the jury in the '965 patent case found that St. Jude did not infringe the '965 parent patent because St. Jude's plastic tube is not the equivalent of the claimed "coil."  (A4350-55 at A4354.)

Volcano learned during discovery in the '965 patent case that St. Jude's current products did not have a coil, but instead used a plastic tube.  So in June 2011, after seventeen years of prosecuting an extensive patent family flowing from

a 1994 application, Volcano returned to the Patent Office and replaced the term

"coil" with the phrase "flexible element" in all claims that later issued as the '647

and '648 patents. (A126-30, at A128; A740-71, at A752.) The term appears

nowhere in the patents' written description of the invention. (A9.)

After the jury verdict on the '965 patent, Volcano met with the '647 and

'648 examiners and convinced them to issue the '647 and '648 patents. (A843-64,

at A857; A367.) Volcano never told either examiner that related patents were in

litigation, or that a jury had found against it under the doctrine of equivalents on

the very claim limitation it was trying to broaden. Volcano filed this lawsuit on the

'647 and '648 patents on April 16, 2013, the day the patents issued. (A52.)

## B.    Volcano Described and Claimed A Coil Throughout the Patent Family

The '647 and '648 patents claim priority to now-abandoned U.S. Patent

Application No. 08/300,445, filed September 2, 1994 (the "'445 application").

(A15, A31.) The family that claims priority to the '445 application (the "'445

family") includes eight patents and ten applications. (A31, A1532, A2335.) The

written descriptions of the patents-in-suit are substantially identical to that of the

'445 application. (*Compare* A17-28 *with* A1490-1501.) None of the written

descriptions contain the term "flexible element."

The applicants modified the written description of the third application in the

'445 family (filed August 15, 1997) and all subsequent applications (including the

'647 and '648 patents) to add: "The use of the two coils 46 and 54 on opposite ends of the housing 51 provides a very flexible floppy tip for the guide wire 21 as described in U.S. Patent No. 5,174,295." (A3579.) This new material reflects the primacy of the coils to the claimed invention. All subsequent related applications are identical to the 1997 application and include this new material.

Throughout the 17 years of prosecution of the '445 family, Volcano consistently claimed a "coil" disposed proximal to the sensor housing. Five of Volcano's six prior issued patents claimed a coil in this position:

| Patent Number | Issue Date | Claim Language |
|---|---|---|
| US 5,715,827 | February 10, 1998 | 3. A guide wire having pressure sensing capabilities … comprising … a flexible elongate member and … a housing carried by the flexible elongate member …, first and second **coil** springs formed of different materials and having proximal and distal extremities with the proximal extremity of the first **coil** being secured to the distal extremity of the flexible elongate member, said housing serving as an intermediate housing having proximal and distal extremities disposed between the first and second coils, the proximal extremity of the intermediate housing being secured to the distal extremity of the first **coil** spring …. (A1501.) |
| US 6,106,476 | August 22, 2000 | 12. Apparatus for measuring the pressure proximally and distally of a stenosis …, a flexible elongate member … having a flexible floppy |

| Patent Number | Issue Date | Claim Language |
|---|---|---|
| | | distal extremity with first and second spaced-apart **coils** … and being collinear within the 0.018" diameter of the distal extremity of the flexible elongate member and disposed distally of at least one of the first and second **coils** …. (A1515-16.) |
| US 6,976,965 | December 20, 2005 | 1. A pressure sensor apparatus comprising … a sensor housing …; a first **coil** disposed proximally from the sensor housing …. (A1530.) |
| US 7,097,620 (Volcano omitted this patent from its diagram of the '445 patent family) | August 29, 2006 | 1. A pressure sensor apparatus having pressure sensing capabilities, the pressure sensor apparatus comprising: a guidewire having a maximum diameter of 0.018'' or less; a sensor housing having an external wall and a lumen, the sensor housing disposed near a distal extremity of the guidewire; a **coil** disposed proximally from the sensor housing …. (A1545.) |
| US 7,967,762 | June 28, 2011 | 1. An apparatus for measurement … comprising … a sensor housing …; a first **coil** disposed proximally from the sensor housing; and a second coil disposed distally from the sensor housing.  (A1560.) |

The sole '445 patent family member that does not claim a coil is U.S. Patent

No. 6,767,327, entitled "Method of Measuring Blood Pressure and Velocity

Proximally and Distally of a Stenosis."  (A3400-16.)  That is because it is a method

patent focused on measuring blood pressure and velocity.  The '827 and '476

patents, unlike the other patents, also have some claims that do not feature a coil,

but those claims concern details of a semiconductor chip used to detect pressure, and are not focused on the structure of the guidewire.  (A1501, A1515.)  The '620 patent also contains a few method claims that likewise do not require a coil. (A1545.)

While the term "flexible element" does not appear in any of the prior six patents, the terms "flexible elongate element" and "flexible elongate member" are used in the specifications and in some claims in Volcano's ancestor patents.  In contrast to "flexible element," these two terms are terms of art, and the written description itself defines "flexible elongate element."  (A24, col.3 ll.51-56 ("flexible elongate element 41 … conventionally called a 'hypotube'").)  These terms are synonyms for hypotube, a limitation separate from the "flexible element" in the '647 and '648 patents' claims.  The '648 patent's claims use the term "hypotube," while the '647 patent's claims use the term "elongate tubular member," to refer to the "flexible elongate element."  (A28, A45.)  The "flexible element" is required to have "increased flexibility relative to the … hypotube" ('648 patent) or "compared to the elongate tubular member" ('647 patent).  (A28, col.11 ll.45-58; A45, col.11 ll.51-54.)

## C.     The District Court Construes "Flexible Element" and Grants Summary Judgment

The district court held an early *Markman* hearing on "flexible element" because its meaning could resolve the case on summary judgment.  (A48-57 at

A54.)  St. Jude presented evidence that the term "flexible element" had no plain and ordinary meaning in the art.  (A2304-30 at A2312.)  St. Jude's expert—Professor William Durfee, an engineer with extensive experience in the guidewire art—provided a declaration, which explained that "flexible element" was not a term in the guidewire or related arts.  (A2048-62 at A2053.)  Volcano did not submit any testimony, but instead argued that because "flexible" and "element" each appear separately in the dictionary, the phrase "flexible element" necessarily has a plain and ordinary meaning.  (A1339-95 at A1349, A1375, and A1385-86.)  The district court agreed with St. Jude that "flexible element" did not have a plain and ordinary meaning in the art.  (A9.)  The district court then analyzed the written description and other intrinsic evidence and found that a person having ordinary skill in the art would have understood "flexible element" to mean "coil."  (A8.)

St. Jude had also contended that "flexible element" was a § 112(f) "means-plus-function" term.  (A1339-95 at A1360-65; A1389-91.)  The district court rejected this argument.  (A8.)

Volcano conceded that it could not succeed on a literal infringement claim under the district court's construction.  (A13-14.)  And because a previous jury had found that St. Jude's devices did not infringe the "coil" term under the doctrine of equivalents in the parent '965 patent, Volcano could not show that St. Jude's devices had the equivalent of a "flexible element" under this construction.  The

district court thus granted judgment of noninfringement and dismissed St. Jude's other defenses as moot.  (A13.)

### D.     The Written Description of the Invention

The asserted patents concern ways of measuring the severity of a blockage ("stenosis") in the cardiac arteries.  (A15-30 at A26, col.7 l.44-col.8. l.27.)  The claimed devices measure the pressure at either side of a blockage in the heart's arteries, and from this measurement, a physician can better determine if balloon angioplasty or a stent is necessary.  (A26, col.7 ll.44-66.)[2]

In this case, Volcano asserted claims directed to the guidewire.  The written description explains that "[t]he portion of the guide wire **21** therefore described is substantially conventional."  (A24, col.4 ll.49-50.)  As the patents explain, "the guide wire **21** can be constructed utilizing the various constructions as shown in U.S. Pat. Nos. 5,125,137 … [and five other patents]."  (A24, col.3 ll.47-50.)

---

[2] The shared written descriptions of the '647 and '648 patents describe six aspects of the technology:  (1) design of a semiconductor chip used to measure pressure (A24-26, col.4 l.51-col.7 l.43, col.8 ll.47-56; A18-20 (Figures 4-12)); (2) methods of measuring on either side of a stenosis (A26, col.7 l.44-col.8 l.27); (3) design of a device having both pressure and flow sensors on it (A26, col.8 ll.28-46); (4) design of a device having two pressure sensors on it (A27, col.9 ll.13-34); (5) design of a sensor combined with a balloon angioplasty device (A27-28, col.10 l.26-col.11 l.10); and (6) design of a guidewire having a sensor housing connected to a hypotube with coils (A24, col.3 l.17-col.4 l.50).  Claims directed only to the sixth aspect of this technology are at issue here.  Volcano has not asserted claims directed to the first five aspects, which St. Jude likewise does not practice.

Volcano concedes that its claimed guidewire design was conventional.

(Appellant's Br. at 5-6.)

The patents' written description describes the particular guidewire design of

"the present invention":

> [T]he guide wire **21** of the present invention having pressure
> measuring capabilities as shown in FIG. **1** is one that is adapted
> to be used in connection with a patient **22** lying on a table or a
> bed **23** in a cath lab of a typical hospital in which a
> catheterization procedure such as for diagnosis or treatment is
> being performed on the patient….
>
> …
>
> The guide wire **21** is shown more in detail in FIG. **2**…. [S]uch a
> guide wire consists of a flexible elongate element **41** …
> conventionally called a 'hypotube' ….
>
> …
>
> A coil spring **46** is provided …. The spring **46** is … threaded
> onto the distal extremity **43** of the flexible elongate member **41**.
> The distal extremity **48** of the coil spring **46** is threaded onto the
> proximal extremity **49** of an intermediate or transition housing **51**
> ….

(A24, col.3 l.32 – col.4 l.5.)

As the written description explains, Figure 2 illustrates "a guide wire

incorporating an ultra miniature pressure sensor of the present invention" (A23,

col.2 ll.34-36):



(A17, Figure 2 (with labels "coil," "sensor housing," and arrows added).)  Every figure in the patents illustrating the guidewire aspect shows a hypotube-coil-sensor housing arrangement.  (A17, A21-22; *see also* A2372.)  These figures are Figures 2, 3, 13, 14, 15, 16, 16A, and 17; Figures 4-12 illustrate the design of the semiconductor chip.

### E.    The Prosecution History

During the 19-year prosecution history of the asserted patents, Volcano addressed the significance of the coils to gain allowance of claims over the prior art cited by the examiner.  In the ancestor '965 patent prosecution, Volcano first sought claims for a guidewire having a "flexible elongate member" and a "sensor housing," but not requiring a "coil."  (A4058-71 at A4066-67.)  The examiner rejected those claims as anticipated by or obvious over U.S. Patent 4,274,423 ("Mizuno"), U.S. Patent 3,724,274 ("Millar"), and U.S. Patent 4,964,409 ("Tremulis").  (A4047-56 at A4052-54.)

Each of these three prior art references cited by the examiner disclosed a flexible tube proximal to a sensor housing.  For example, Mizuno described a "flexible catheter" identified as "hollow tube catheter 10" proximal of the pressure

sensor. (A4457-69 at A4464, col.1 l.65 & col.4 l.9 & fig. 3.) The figures in

Mizuno showed this flexible, hollow, polymer tube (10) proximal of the sensor:



(A4459, fig. 3.)

Likewise, Millar disclosed use of a sensor at the end of a catheter. It also

disclosed a hollow "flexible cable 18" proximal of the pressure sensor. (A4449-56

at A4452, col.2 ll.59-60.) Like Mizuno, the figures in Millar showed the hollow,

flexible tube (18) proximal of the sensor housing:



(A4450, fig. 4.) Thus, the examiner relied upon Mizuno and Millar—having a

flexible tube proximal to the sensor housing—to find the claims anticipated and

obvious.

To overcome this prior art, Volcano amended claim 71 to add the claim

limitation "a first coil disposed proximally from the sensor housing," and "a

second coil comprising a radiopaque material and disposed distally of the sensor

housing." (A4030-42 at A4031.) Following the addition of these "coil"

limitations, the examiner allowed the patent.  (A3987-90.)  All claims not having the coil limitations (*e.g.*, independent claims 81 (A4033), 91 (A4035), and their dependent claims) were cancelled.  (A3998-4002, at A4002.)

The examiner stated:  "Claim[] 71… define[s] over the art of record in that none of the art shows the sensor housing having a first coil disposed proximally of the housing and a second coil disposed distally of the housing, where the second coil is radiopaque."  (A3989.)  The '965 patent's claim 1 would not have been allowed but for the claimed coils.

Similarly, during prosecution of the claims that issued in the second patent of the '445 patent family—U.S. Patent No. 6,106,476—Volcano's claims were rejected over prior art, including the Wise reference.  (A3569-75.)  The Wise reference had a plastic tube proximal to its sensor housing.  (A3571, A2374, A861, A2058.)  In response, Volcano argued that, unlike Wise, "Applicants' guide wire should have a flexible floppy distal extremity.  This is provided by the use of coils on opposite ends of the housing."  (A3579-88 at A3583.)

In this same response, Volcano added to the written description:  "The use of the two coils 46 and 54 on opposite ends of the housing 51 provides a very flexible floppy tip for the guide wire 21 as described in U.S. Patent No. 5,174,295."  (A3579.)  Volcano also amended the claims to add the language "having a flexible floppy distal extremity with first and second spaced-apart coils."  (A3581

- 14 -

(amendment to application claim 19.))  In a later argument for patentability, Volcano explained that '476 patent claim 12 (at this point numbered application claim 15), "is another independent claim and calls for first and second spaced apart coils.  Such an arrangement is also not shown or suggested by the references cited, and it is, therefore, respectfully submitted that Claim 15 is allowable."  (A3712-24 at A3719.)  This amended claim issued as claim 12 in the '476 patent.  (A1515-16.)

## SUMMARY OF THE ARGUMENT

Volcano's construction of "flexible element" depends on the false premise that "flexible element" has a "plain meaning" in the guidewire art.  The evidence shows that "flexible element" does not have a plain and ordinary meaning in the art of guidewire design.  The term does not appear anywhere in the '647 and '648 patents' written description.  (A9; A15-47; A2341.)  And St. Jude's expert testified that "flexible element" is "vague and does not have any particular or specialized meaning to those in the art of guidewire design, catheter design, or medical device design."  (A2053, ¶ 22.)

When a term does not have a plain and ordinary meaning in the relevant art, courts must discern the meaning from the written description and prosecution history.  This Court has often addressed claim terms that "had no independent meaning in the art," *Vanderlande Indus. Nederland BV v. ITC*, 366 F.3d 1311,

1320 (Fed. Cir. 2004), or that had "no precise and generally understood meaning in the art." *On-Line Tech. v. Bodenseewerk Perkin-Elmer*, 386 F.3d 1133, 1138 (Fed. Cir. 2004). In those cases, "[w]here a claim term has no ordinary and customary meaning, a court must resort to the remaining intrinsic evidence—the written description and the prosecution history—to obtain the meaning of that term." *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1164 (Fed. Cir. 2004). This Court has followed this methodology in construing a wide variety of made-up phrases— *e.g.*, "glide surface," "download component," and "frequency variation signal"— that had no accepted meaning in the relevant art.

The district court correctly followed this line of cases in construing Volcano's made-up phrase "flexible element" as a coil. Under this analysis, "flexible element" must mean the coil described in every embodiment in the written description and referred to as part of "the present invention." It cannot cover a plastic tube that was distinguished in arguments during the prosecution of ancestor patent applications in the same patent family.

Finally, Volcano wrongly contends that the only evidence submitted on whether "flexible element" has a plain and ordinary meaning in the art—Professor Durfee's declaration—should be ignored because it is extrinsic. In contrast to cases of expert testimony on the substantive meaning of a claim term, this Court has recognized the high value of expert testimony in determining whether a claim

term has a plain and ordinary meaning.  *See, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1362 (Fed. Cir. 2013).  This is precisely the purpose for which St. Jude relies on Dr. Durfee's testimony, and Volcano has nothing to counter it.

Alternatively, "flexible element" is a means-plus-function term.  Like "moving element" or "colorant selection mechanism," taking "flexible" and adding one of "[t]he generic terms 'mechanism,' 'means,' 'element,' and 'device'" does not create a new term having a plain and ordinary meaning in the art.  *Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006) ("*MIT*").  These novel and litigation-inspired phrases coined by patent attorneys "typically do not connote sufficiently definite structure" to avoid means-plus-function treatment. *MIT*, 462 F.3d at 1354.  Here, facing a loss in litigation of its parent '965 patent, Volcano sought to expand its invention beyond the written description.  It did so by creating the phrase "flexible element" and asserting that it covers any structure providing flexibility and located between the claimed "hypotube" ('648 patent), or synonymous "elongate flexible member" ('647 patent), and the sensor housing. This functional claiming is inappropriate because it would allow Volcano "broadly to cover every conceivable way or means to perform the function …, and there is no structure recited in the limitation that would save it from application of section 112, ¶ 6."  *Mas-Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1214 (Fed. Cir.

1998). Therefore, § 112(f) applies. And the only structure disclosed in the '647 and '648 patents for providing flexibility between the hypotube and the sensor housing is a coil. The Court may also affirm the noninfringement judgment on this alternative ground.

## ARGUMENT

### A. The District Court Correctly Construed "Flexible Element"—A Term Having No Plain Meaning in the Relevant Art—By Using Intrinsic Evidence

#### 1. Where a Term Has No Plain and Ordinary Meaning in the Art, Its Meaning Must Be Found in the Intrinsic Record.

Where a term like "flexible element" does not have a plain and ordinary meaning in the art, the court must look to the intrinsic record to construe the term. For example, in *Vanderlande*, this Court was asked to construe the phrase "glide surface." 366 F.3d at 1320. In that case "the expert witness for [the accused infringers] and the inventors named on the '510 patent testified that the term 'glide surface' had no independent meaning in the art of sortation systems." *Id.* Vanderlande, like Volcano, contended that definitions of "glide" and "surface" in dictionaries should be controlling. *Id.* This Court explained that "where evidence … demonstrates that artisans …, as here, would attach no meaning at all to that claim term (independent of the specification), general-usage dictionaries are rendered irrelevant with respect to that term …." *Id.* at 1321. Instead, this Court turned to the written description of the invention to give meaning to "glide

surface," because "the intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language, … and this is particularly true where, as here, the written description provides definite and readily discernible guidance as to the intended meaning of a structural claim term." *Id.* (internal quotations omitted).

Further, in *Network Commerce*, this Court construed the term "download component," which "does not have a specialized meaning in the relevant art." *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1359 (Fed. Cir. 2005). While acknowledging that this Court would normally "construe a claim term as having its 'ordinary and customary meaning,'" it held that "[d]ownload component is not a claim term amenable to construction in this manner because it has no commonly understood meaning …." *Id.* The Court rejected Network Commerce's construction based on dictionary definitions of "download" and "component," finding that "[t]his not a tenable theory in light of the specification." *Id.* at 1360.

More recently, this Court found that "frequency variation signal" did not have a plain and ordinary meaning, and disagreed that a dictionary could be used to discern its meaning. *Power Integrations*, 711 F.3d at 1362 ("We are not persuaded that the claims inform a plain and ordinary meaning of the term 'frequency variation signal,' nor do we agree with Fairchild that we need only a dictionary to discern the meaning of 'frequency variation signal.'"). Instead, this Court used the

written description to construe this claim term, because "[i]f … the claim term does not have an ordinary meaning, and its meaning is not clear from a plain reading of the claim, we turn to the remaining intrinsic evidence, including the written description, to aid in our construction of that term." *Id.* at 1361.

This Court also recently construed the phrase "essentially free" to mean "less than 0.25%." *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1276-77 (Fed. Cir. 2013). This Court agreed "with the district court that there is no plain or ordinary meaning to the claim term 'essentially free' …." *Id.* at 1276. Like "flexible element" in the '647 and '648 patents, "essentially free" "does not appear anywhere in the written description." *Id.* The patentees advocated a construction of "largely but not wholly free," but this Court, noting that there is no plain meaning, found meaning in the intrinsic evidence. *Id.* In particular, the patentee's remarks in the prosecution history were the best evidence of the meaning of "essentially free." *Id.* at 1277.

And in *Honeywell*, this Court was tasked with construing "terrain floor boundary," a term that the district court found "had no ordinary meaning to a skilled artisan at the time of filing of the patent application." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 991 (Fed. Cir. 2007). This Court held that "[w]ithout a customary meaning of a term within the art, the specification usually supplies the best context for deciphering claim meaning." *Id.*

Likewise, in *On-Line Tech.*, this Court was asked to construe "substantially spherical ... having a cylindrical component added thereto." *On-Line Tech.*, 386 F.3d at 1138. Because this term "has no precise and generally understood meaning in the art as applied to reflective surfaces," this Court opined that one must "look to the intrinsic evidence, in this case the specification, for guidance as to the meaning of that language as used in the patent." *Id.* This Court then explained that when there is "no precise and generally understood meaning in the art," the written description is not required to provide an explicit definition, since "in this case, as in others …, the guidance in the specification is not provided in explicit definitional format," but "the specification of the '143 patent nonetheless demonstrates that the claim language encompasses toroidal surfaces." *Id.* (internal quotations omitted).

Finally, in *Irdeto*, this Court was asked to construe the phrase "group key." *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004). The patentee contended that ordinary dictionary definitions of "group" and "key" should have been used to define this phrase, that these dictionary definitions mean that the term has an ordinary meaning, and that this ordinary meaning creates a heavy presumption that these dictionary definitions apply. *Id.* Like Volcano, the patentee contended that "[a]bsent 'clear disclaimer' or words of 'manifest exclusion,' … the heavy presumption of ordinary meaning must apply." *Id.* But

- 21 -

this Court held "that there can be no such 'heavy presumption' where a disputed term lacks an accepted meaning in the art…. [A]bsent such an accepted meaning, we construe a claim term only as broadly as provided for by the patent itself." *Id.* "[W]here evidence such as expert testimony or technical dictionaries demonstrates that artisans … would attach no meaning at all to the claim term independent of the specification general-usage dictionaries are rendered irrelevant with respect to that term." *Id.* (internal quotations omitted).

Because "flexible element" does not have a plain and ordinary meaning in the relevant art, Volcano's analysis, based on *Thorner v. Sony Comp. Ent. Am. LLC*, falls apart. Unlike this case, *Thorner* concerned terms that had a plain and ordinary meaning in the relevant art. 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("The plain meaning of the term 'attached' …").

Thus, this Court has consistently held that where a claim term does not have a plain and ordinary meaning in the relevant art, one must look to the intrinsic evidence—the specification and the prosecution history—for meaning.

### 2. "Flexible Element" Has No Plain and Ordinary Meaning in the Guidewire or Medical Device Art.

This case falls squarely within the precedent cited above. Like the terms construed above, each of the words "flexible" and "element" has a dictionary definition. But here, the term "flexible element" has no plain meaning in the relevant art. Because the purpose of claim construction is to discern the meaning

- 22 -

of a claim term to one of ordinary skill in the art at the time of the claimed invention, the intrinsic evidence—not Volcano's general dictionary definitions—controls.

### a.    This Court does not define multi-word phrases with no meaning in the art simply by combining dictionary definitions.

Volcano starts and ends its analysis by declaring that "flexible element" has an ordinary meaning in the art.  But Volcano offers no evidence of how one of skill in the art would understand the term.  Volcano instead offers a Random House Dictionary definition of the word "flexible."  But this Court has repeatedly rejected the notion that so long as a two-or-more-word phrase consists of English words, the meanings of which can be found in a dictionary, a phrase has a plain and ordinary meaning.

For example, in *Network Commerce*, the patentee "invite[d] the court to combine individual definitions of 'download' and 'component.'"  *Network Commerce*, 422 F.3d at 1359-60.  This Court rejected that invitation.  *Id.*  The Court instead defined "download component" in light of the written description because the term "does not have a specialized meaning in the relevant art."  *Id.*

Similarly, this Court ruled that "glide surface" did not have an "independent meaning in the art," even though the patentee relied on a dictionary definition of "glide," and "surface" is also an English word found in the dictionary.  *Vanderlande*, 366 F.3d at 1321.  The Court observed that the patentee "did not

present any evidence outside of the dictionary definition of the word 'glide' to show that 'glide surface' has an ordinary meaning in the material handling industry or the sortation industry." *Id.* Here, Volcano likewise submitted little besides its dictionary definition of "flexible" to support its contention that "flexible element" had a plain and ordinary meaning in the art of guidewire design, catheter design, or medical device design.

Volcano also relies on a pair of California district court cases concerning a valve and a "bundle breaker" for breaking apart corrugated cardboard. (Appellant's Br. at 22.)  In the valve case, both parties insisted that in the valve art, the meaning of "flexible element" should begin with the Random House Dictionary definition of "flexible." *ICU Med., Inc. v. B. Braun Med., Inc.*, 344 F. Supp. 2d 663, 668 (N.D. Cal. 2004) ("The parties agree that the construction of the term 'flexible' begins with its dictionary definition.").  Moreover, the district court in that case found that "none of the disputed terms [including 'flexible element'] have specialized meanings in the relevant art," *id.* at 668 & n.1, and thus, "they will not obtain the strong presumption [of ordinary meaning] that is provided for in the relevant cases," *id.*  In the bundle breaker case, the term at issue was "flexible member," not "flexible element," and neither party contended, like here, that this different term lacked a plain and ordinary meaning in the simple mechanical arts at

issue.  *Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l, LLC*, 2007 WL 4105832, at *5 (N.D. Cal. Nov. 16, 2007).  And neither case, of course, is precedential.

In addition, neither case is probative of what the term "flexible element" means in the art of guidewire design, catheter design, or medical device design.  As this Court explained when a party proffered "over 200 patents using the term 'glide surface' to describe a low friction contact surface and discovered similar results using an Internet search engine," such evidence is not probative unless "these patents and Internet findings are specific to the art of sortation systems." *Vanderlande*, 366 F.3d at 1320 n.4 (internal quotations omitted).  Likewise, how "flexible element" is defined in one patent in the unrelated valve art, or how a different term—"flexible member"—is construed in the bundle breaker art, is irrelevant.

Finally, Volcano relies on three patents belonging to St. Jude, only one of which concerns the area of technology at issue in this litigation (U.S. Patent No. 7,011,636 (A1432-43)).  The other two patents concern cardiac ablation technology.  None of these patents use "flexible element" in their claims.  Instead, two of these patents, U.S. Patent Nos. 6,780,181 and 7,011,636, use "elongate flexible member."  (A1429, A1440.)  Unlike "flexible element," "elongate flexible member" is a term of art that means a "hypotube"—something that the asserted patents also recognize.  (A24, col.3 ll.51-56, A41, col.3 ll.60-61.)  Volcano also

- 25 -

does not explain the technology or usage of "flexible element" and the differing term "flexible member" in the patents found in its patent search. *Cf. Vanderlande, supra*, 366 F.3d at 1320 n.4. Volcano does not even indicate whether any of these patents used the term "flexible element" rather than "flexible member."

Volcano essentially argues that any time a multi-word phrase consists of English words that appear in the dictionary, that phrase has a plain and ordinary meaning. But this Court's precedents decisively refute this notion. In these circumstances, the proposition on which Volcano relies—that where a claim term has a plain and ordinary meaning to a skilled artisan, the written description and prosecution history are only relevant for lexicography and disavowal—does not apply. This Court instead requires an analysis of the written description and prosecution history to discern how a skilled artisan would have understood the term in the context of the patent. The district court was correct to follow that directive here. Volcano's challenge to the district court's construction therefore fails.

### b. This Court has repeatedly recognized the usefulness of expert opinion regarding whether a term has a plain and ordinary meaning.

The unrebutted evidence shows that "flexible element" "does not have any particular or specialized meaning to those in the art of guidewire design, catheter design, or medical device design." (A2053 ¶ 22.) This evidence was provided by

Professor William Durfee, Professor and the Director of Design Education at the

Department of Mechanical Engineering at the University of Minnesota, Twin

Cities, and Program Chair for the Design of Medical Devices Conference.

(A2048-49 ¶¶ 3, 7.)  By contrast, Volcano did not offer any evidence of the use of

"flexible element" in the art.

Volcano contends that Professor Durfee's declaration should be ignored

because "the district court … elected not to rely on his declaration."  (Appellant's

Br. at 25.)  There is no basis for Volcano's contention.  While  the district court did

not expressly cite the Durfee declaration, the court's opinion agrees with Professor

Durfee that "[f]lexible element does not have a previous meaning in the art to one

of ordinary skill."  (A9.)  Moreover, Volcano "forgets that this court reviews

judgments, not phrases in opinions," *FMC Corp. v. Hennessy Indus., Inc.*, 836 F.2d

521, 524 (Fed. Cir. 1987).  Professor Durfee's declaration supports the judgment,

regardless of whether the district court specifically cited it.  *Bailey v. Dart

Container Corp. of Michigan*, 292 F.3d 1360, 1362 (Fed. Cir. 2002) ("[A]n

appellee can present in this court all arguments supported by the record and

advanced in the trial court in support of the judgment as an appellee, even if those

particular arguments were rejected or ignored by the trial court.").

This Court has often relied on experts in the art to determine whether a claim

term has a plain and ordinary meaning.  *See, e.g., Power Integrations*, 711 F.3d at

1361-62; *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.,* 288 F. App'x 697, 704 (Fed. Cir. 2008) (nonprecedential). For example, in *Power Integrations*, "an expert for Power Integrations … testified that [t]he term 'frequency variation signal,' recited in the '851 Patent, is not a term of art. Nor would this term have had … a plain and ordinary meaning to one of skill in the art at the time of the invention." *Id.* at 1361. Like Volcano here, "Fairchild offer[ed] no evidence to contradict the testimony of [Power Integrations' expert] other than its own assertion that 'frequency variation signal' has a plain and ordinary meaning." *Id.* at 1362. This Court relied on Power Integrations' expert's opinion in construing the term. *Id.*

Similarly, in *Aspex Eyewear*, this Court relied on "Altair's expert Dr. Leck [who] stated in his expert report that 'retaining mechanism' has no common meaning in the eyeglass industry, and that he had no 'mental picture of a specific structure when [he heard] the term.'" 288 F. App'x at 703. And in *Vanderlande*, this Court relied on "the expert witness for Siemens … [who] testified that 'glide surface had no independent meaning in the art of sortation systems." *Vanderlande*, 366 F.3d at 1320. These cases confirm that expert testimony that a claim term has no plain and ordinary meaning in the art can be highly probative—particularly when, as here, that testimony is unrebutted.

### 3. The Only Meaning for "Flexible Element" Consistent with the Written Description and Prosecution History is "Coil."

Because "flexible element" has no plain and ordinary meaning, "our inquiry here starts with the intrinsic record, including the specification, and not with a dictionary definition of the disputed term." *Power Integrations*, 711 F.3d at 1362. The written description and prosecution history are consistent with only one construction: "flexible element" means "coil."

### a. The written description describes only embodiments having a coil and even describes a coil as part of the "present invention".

Every embodiment in the '647 and '648 patents includes a coil. (A17, A21-22, A2340.) And every figure in the patents illustrating the guidewire aspect shows a hypotube-coil-sensor housing arrangement. (A17, A21-22 (Figures 2, 3, 13, 14, 15, 16, 16A, and 17); A2340.)

Figure 1 and Figure 2 show the guidewire, labeled "21," of the invention. Figure 2 "is a side elevational view of a guide wire incorporating an ultra miniature pressure sensor of the present invention." (A23, col.2 ll.34-36.) The text associated with Figure 2 in the patent confirms that it embodies the guidewire of "the present invention":

> [T]he guide wire **21** of the present invention having pressure measuring capabilities as shown in FIG. **1** is one that is adapted to be used in connection with a patient **22** lying on a table or a bed **23** in a cath lab of a typical hospital in which a catheterization procedure such as for diagnosis or treatment is being performed on the patient….

> …
>
> The guide wire **21** is shown more in detail in FIG. **2**…. [S]uch a
> guide wire consists of a flexible elongate element **41** …
> conventionally called a 'hypotube' ….
>
> …
>
> A coil spring **46** is provided …. The spring **46** is … threaded
> onto the distal extremity **43** of the flexible elongate member **41**.
> The distal extremity **48** of the coil spring **46** is threaded onto the
> proximal extremity **49** of an intermediate or transition housing **51**
> ….

(A24, col.3 l.32 – col.4 l.5.)

In this text, Figure 2 is presented not as a mere example, but rather, as a

figure showing "the guide wire **21** of the present invention" in greater detail. And

according to the text describing Figure 2, "the guide wire **21** of the present

invention" has a "coil spring" threaded onto the distal end of a "flexible elongate

element,"[3] (also known as a "hypotube") and threaded onto the proximal end of

"an intermediate or transition housing **51**" (also known as a "sensor housing").

Thus, the present invention requires a "coil."

The basic hypotube/coil-spring/housing design is laid out in Figure 2. (A17,

A23, fig.2 & col.2 ll.34-36.) The patents also disclose embodiments that allow

features to be added to the hypotube/coil-spring/housing design, including

---

[3] The '648 patent's claims use the term "hypotube," while the '647 patent's claim
use the term "elongate tubular member," for this part. (A28, A45.) Unlike
"flexible element," "flexible elongate element" is a term of art, is defined in the
patent itself ("flexible elongate element **41** … conventionally called a 'hypotube'",
A24, col.3 ll.51-56), and refers to a hypotube.

additional housings (fig. 14), a cover (fig. 15), a pinhole (fig. 16), and a balloon integral or attached to the hypotube just proximal to the coil (fig. 17). But all of these embodiments are "incorporating the present invention," (A23-24, col.2 l.63-col.3 l.13; A26, col.8 ll.57-58; A27, col.9 ll.13-14, col.9 ll.35-36, col.9 ll.63-64, col.10 l.27), and thus have the hypotube/coil-spring/housing design.

"[W]hen the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment." *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1330 (Fed. Cir. 2009) (citing cases, quotations omitted). "When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon Servs. Corp. v. Vonage Holdings Corp.,* 503 F.3d 1295, 1308 (Fed. Cir. 2007).

In addition, claims are construed in light of the written description, and cannot be construed more broadly than all of the multiple embodiments disclosed in the patent. *See Bayer CropScience AG v. Dow AgroSciences LLC*, 728 F.3d 1324, 1330-31 (Fed. Cir. 2013). Indeed, Volcano's construction calls into serious doubt the claims' validity under 35 U.S.C. § 112(a). While "validity analysis is not a regular component of claim construction," such grave doubts reinforce that Volcano's proposed construction cannot be correct. *See Bayer*, 728 F.3d at 1330.

Because "flexible element" has no plain meaning in the guidewire art, the "present invention" statements in Volcano's written description have even greater force, because "[i]f … the claim term does not have an ordinary meaning, and its meaning is not clear from a plain reading of the claim, we turn to the remaining intrinsic evidence, including the written description, to aid in our construction of that term." *Power Integrations*, 711 F.3d at 1361. And whenever a term appears only in the claims but not in the written description, and has no ordinary meaning in the art, a court must review the written description and prosecution history to discern its meaning. *See Sunovion,* 731 F.3d at 1276-77 (using the specification's examples and prosecution history to construe "essentially free," which had no ordinary meaning and was not used in the specification').

Moreover, a "coil" is not "merely a preferred embodiment of the claimed invention," but is "the only component … disclosed" with increased flexibility proximal to the sensor housing, and "[g]iven the written description's disclosure, … the patentee has limited the scope of the patent claims to a" coil. *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006). "The coverage … [the patentee] proposes would leave the … patent far from providing even an indirect structural identification of all that would be within the claim's scope." *Bayer*, 728 F.3d at 1331.

These principles require "flexible element" to mean "coil" here.

- 32 -

### b.    The prosecution history further demonstrates that a "flexible element" is a coil.

As with the written description, Volcano tries to limit the relevance of the prosecution history to lexicography and disavowal.  But that restriction does not apply where (like here) a claim term does not have a plain and ordinary meaning, and claims must always be read in the context of the written description and prosecution history.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*).  For example, this Court turned to the prosecution history to find meaning for "essentially free," a term having no plain meaning in the art. *Sunovion*, 731 F.3d at 1277.  There, "the applicants' representations … [during prosecution] 'inform[ed] the meaning of the claim language by demonstrating how the inventor understood the invention.'"  *Id.* (quoting *Phillips*, 415 F.3d at 1317). In *Goldenberg*, this Court similarly turned to the prosecution history to define "marker substance," another term lacking a plain and ordinary meaning in the art. 373 F.3d at 1165.  This Court did not require a disavowal of claim scope in the prosecution history in either of these cases.  The Court instead used the prosecution history to discern how the inventor understood the invention.

As explained in the Statement of the Case, during the '965 patent prosecution—the parent application to the '648 patent—Volcano amended its claims to add "a first coil disposed proximally from the sensor housing" and "a second coil comprising a radiopaque material and disposed distally of the sensor

housing." (A4031.) The examiner rejected all claims not having the coil limitations. (A4005-21.) The examiner explained why he allowed the issued claims: "none of the [prior] art shows the sensor housing having a first coil disposed proximally of the housing and a second coil disposed distally of the housing and a second coil disposed distally of the housing, where the second coil is radiopaque." (A3989.) Volcano then cancelled all claims not having the coil limitations. (A4002.) Thus, Volcano's amendments to add the coils were dispositive of allowance.

Similarly, as explained in the Statement of the Case, during prosecution of the second patent in the '445 patent family—U.S. Patent No. 6,106,476—Volcano's claims were rejected over prior art having a plastic tube proximal to its sensor housing. (A3571-72.) In response, Volcano argued to the examiner that "Applicants' guide wire should have a flexible floppy distal extremity. This is provided by the use of coils on opposite ends of the housing." (A3583.) Simultaneously, Volcano added the "use of the two coils … provides a very flexible floppy tip for the guide wire 21" language to the written description. (A3579, A24, col.4 ll.17-20.) This language is the source of the "flexible floppy tip comprising: a first flexible element" and "a second flexible element" language in the '648 patent's claims at issue here. (A28, col.11 ll.44-45, l.57.) This new language emphasized the importance of the two coils to create a flexible floppy tip.

By adding this language to the written description, likewise amending the claims (A3581 (amendment to application claim 19)), and arguing that first and second spaced apart coils were not in the prior art (A3719), the inventors showed that they understood their invention as requiring coils. *See Shire Development, LLC v. Watson Pharmaceuticals, Inc.*, -- F.3d --, 2014 WL 1258136, at *5 (Fed. Cir. Mar. 28, 2014) ("Although the prosecution history statements do not rise to the level of unmistakable disavowal, they do inform the claim construction."); *Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F.3d 973, 977 (Fed. Cir. 2014) ("[T]he prosecution history shows that [the patentee] meant …..").

The facts here are similar to *Heuft Systemtechnik GmbH v. Indus. Dynamics Co.*, 282 F. App'x 836, 841 (Fed. Cir. 2008) (nonprecedential). In *Heuft*, the patentee, Heuft, "amended all of [its] claims to require an exit angle between 30° to 100°" in its parent '408 patent, in order to get around the prior art. *Id.* at 841. In its '974 continuation patent, Heuft dropped the "exit angle between 30° to 100°" limitation and used a § 112 ¶ 6 element instead. *Id.* This Court ruled that "the statements Heuft made during prosecution of the '408 patent related to the same subject matter that is at issue in the relevant claim limitations of the '974 patent…. Consequently, the arguments and amendments Heuft made during prosecution of the '408 patent also operate to disclaim exit angles less than 30° in the claims of the '974 patent." *Id.* Similarly, Volcano's amendments made during prosecution

- 35 -

of the '965 and '476 patents show that coils must be connected to the sensor housing.

Volcano contends that the statements made during the '965 and '476 prosecutions cannot affect claim scope, because the term "coil" was used rather than "flexible element." Contrary to Volcano's assertions, the question is not whether the terms "flexible element" and "coil"—appearing in the '647/'648 and '965/'476 patent claims, respectively—are identical, but whether they cover the same *subject matter*: "statements from prosecution of a familial patent relating to the same subject matter as the claim language at issue in the patent being construed … are relevant in construing the claims at issue." *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1314 (Fed. Cir. 2007); *see also Realtime Data LLC v. Morgan Stanley*, -- F. App'x --, 2014 WL 278757, at *6-7 (Fed. Cir. Jan. 27, 2014) (nonprecedential) ("[T]he declarations made by Realtime's expert, Dr. Modestino, during reexamination of the '506 patent also dealt with the meaning of 'data stream.' The '506 patent shares the same written description as the '747 patent…. Although Dr. Modestino's declaration dealt, in part, with a narrower term 'receiving a data stream,' the declaration makes clear that a person of ordinary skill would understand that a data stream as disclosed in the written description of the '747 patent means a data stream received from an external source."). Here,

"flexible element" and "coil" cover the same subject matter: the coil disposed on each side of the sensor housing.

### 4. Claim Differentiation Does Not Redefine "Flexible Element"

Volcano invokes the doctrine of "claim differentiation" to support two misguided arguments. The first is that "flexible element" has a plain and ordinary meaning in the art of guidewire design, catheter design, or medical device design. The second is that "flexible element" must be construed broadly to encompass a "coil," "balloon," or "flexible elongate tubular member formed of a plastic material" referred to in dependent claims. (Appellant's Br. at 19-20.)

First, whether "flexible element" has a plain and ordinary meaning in the guidewire art is a question independent of Volcano's actions in prosecuting the '647 and '648 patents. Professor Durfee provided the only record evidence on this question. Volcano did not proffer an opinion from its experts on this question. Professor Durfee testified that "flexible element" has no meaning in the guidewire art. (A2053.) Volcano cannot change this fact by pointing to dependent claims, especially because "[c]laim differentiation can not broaden claims beyond their correct scope." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006).

Second, the district court correctly rejected Volcano's claim differentiation arguments based on the dependent claims because "claim differentiation … is not a

rigid rule but rather is one of several claim construction tools." *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009). As the district court observed, "The parties in this case have been wielding their patent portfolios against one another in active litigation since the middle of 2010. (1:10-cv-631-RGA; 1:12-cv-441-RGA)." (A9-10 n.3.) In light of this fact, "a claim differentiation argument regarding claims 16-18 of the '648 patent-dependent claims that cover a hypotube, coil, and balloon as further limitations to 'flexible element' is not persuasive." (A9-10 n.3.) The district court correctly ruled that claim differentiation is even less useful in construing claims "when the patentee seeks to use claim differentiation to expand the claim scope years after the patent was originally filed." (A9-10 n.3 (citing *ICU Medical*, 558 F.3d at 1376 (rejecting claim differentiation argument advanced by patentee where dependent claim "was only added to the[] patent in 2001, years after the filing date of the original patents ... and the introduction of the allegedly infringing Alaris products")).) Here, as the district court observed, "'flexible element' was added almost twenty years after the specification was drafted." (A9-10 n.3.)

Here, claim differentiation would improperly broaden the "flexible element" limitation beyond the structure disclosed in the written description. In each of the independent claims, the flexible element must be between the hypotube and the sensor housing and must have "an increased flexibility relative to the long

proximal hypotube." ('648 patent claims 1, 30, 53; '647 patent claims 1, 27.) The written description never shows a balloon or a "flexible elongate tubular member formed of a plastic material" between the hypotube and the sensor housing that provides an increased flexibility relative to the hypotube as claimed.

The sole reference to a "flexible elongate tubular member formed of a plastic material" and a "balloon" in the written description is found in a description of Figure 17. (A27, col.10 ll.29-40.) In Figure 17, a balloon or flexible elongate member cannot be the claimed "flexible element," because neither has "increased flexibility" "relative to the ... hypotube" as required by the claims. (A29, col.14 ll.59-62 (Claim 53).) The "flexible elongate tubular member **173**" in Figure 17, also called the "flexible elongate member **173**," (A27, col.10 ll.30-34), is the same "flexible elongate member **41**" (A24, col.4 ll.1-3) described as the "hypotube" in connection with the "present invention" in Figure 2 (A24, col.3 ll.50-58). Figure 17's plastic hypotube cannot be the claimed "flexible element"; it cannot have an "increased flexibility relative to [itself]."

Nor is the balloon described as having any flexibility relative to the hypotube. Instead, in Figure 17, "coil spring 178" is the only structure that provides an increased flexibility between the balloon/flexible-elongate-tubular-member assembly and the sensor housing:



(A22, fig. 17 (annotations added).)

"[C]laim differentiation is a rule of thumb that does not trump the clear import of the specification." *Edwards Lifesciences*, 582 F.3d at 1332. Volcano's arguments are similar to arguments rejected in *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1359 (Fed. Cir. 2012) (*en banc*). In that case, this Court construed the independent claims to require that scores be zero. HemCon sought a broader construction, and argued that the district court's claim construction was erroneous because dependent claims allowing for "non-zero scores" would not be within the scope of the court's construction of the independent claim. *Id.* This Court rejected HemCon's claim differentiation argument:

> [HemCon's] arguments highlighting an inconsistency between the district court's construction and the [dependent] claims requiring non-zero elution test scores, while not baseless, essentially amount to a conflict between teachings in the specification and the doctrine of claim differentiation. As we have held, claim differentiation is not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history.

*Id.* (quotations omitted, collecting cases). Likewise here, a claim differentiation argument cannot trump the construction dictated by the written description and prosecution history.

Nor must the independent claims at issue here be construed to preserve the validity of these dependent claims. While this Court has "acknowledged the maxim that claims should be construed to preserve their validity," this Court has "not applied that principle broadly .... Instead, we have limited the maxim to cases in which the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous." *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 690 (Fed. Cir. 2008) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005)). That is especially true here, where Volcano's proposed construction of "flexible element" raises questions about whether the independent claims are valid under § 112(a)'s written description requirement, and "such grave doubts reinforce the textual objections to" Volcano's proposed construction. *See Bayer*, 728 F.3d at 1330. This Court has declined to construe independent claims to preserve the validity of dependent claims in other cases too. *See, e.g.*, *Marine Polymer*, 672 F.3d at 1359; *800 Adept, Inc. v. Murex Secs., Ltd.*, 539 F.3d 1354, 1366 (Fed. Cir. 2008); *Intamin Ltd. v. Magnetar Techs. Corp.*, 483 F.3d 1328, 1337 (Fed. Cir. 2007). Volcano's reliance on a claim construction tool of last resort is thus misplaced.

Volcano also wrongly contends that the difference between the "flexible element" language in the '647 and '648 patents' independent claims and the "coil" language used in the independent claims of its five prior patents in the family shows, by claim differentiation, that "flexible element" and "coil" have different meanings. Claim differentiation has little force when comparing independent claims, especially claims from different patents, for "[i]t is not unusual that separate claims may define the invention using different terminology, especially where (as here) independent claims are involved." *Hormone Research Found. v. Genentech, Inc.*, 904 F.2d 1558, 1567 n.15 (Fed. Cir. 1990); *see also Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1098 (Fed. Cir. 2008) ("With regard to claim differentiation, this court is aware that claim 1 of the '478 patent recites a rotating element, while claim 1 of the '254 patent does not. This difference between claims in different patents does not change the meaning ....").

The '647 and '648 patents' claims illustrate this principle. The '648 patent claims recite a "hypotube," while the '647 patent's claims recite an "elongate tubular member," but both terms refer to the "flexible elongate element **41** … conventionally called a 'hypotube' …." (A28 ('648 patent claim 1), A45 ('647 patent claim 1), A24, col.3 ll.51-56.) "[C]laim drafters can also use different terms to define the exact same subject matter." *Curtiss-Wright*, 438 F.3d at 1380. That is precisely what Volcano did by using "hypotube" and "elongate tubular member"

to refer to the "flexible elongate member **41**," and also by using "coil" and "flexible element" to refer to the "coil spring **46**."

"[T]wo considerations generally govern this claim construction tool when applied to two independent claims: (1) claim differentiation takes on relevance in the context of a claim construction that would render additional, or different, language in another independent claim superfluous; and (2) claim differentiation 'can not broaden claims beyond their correct scope.'" *Curtiss-Wright*, 438 F.3d at 1381. Here, defining "coil" and "flexible element" as the same thing does not make language in either independent claim superfluous. This is because "flexible element" does not appear in those independent claims requiring a "coil," and "coil" does not appear in the '647 and '648 patent's independent claims. Volcano instead improperly tries to use claim differentiation to "broaden the claims beyond their correct scope." *Id.*

### 5. A Restriction Requirement is Not a Judgment Regarding the Meaning of Claim Terms that Affects a Term's Construction

Volcano also treats a restriction requirement during prosecution as if it were a substantive ruling by the examiner on the meaning of "flexible element." While "a patent applicant's response to a restriction requirement may be used to interpret patent claim terms or as a source of disclaimer," *Uship Intellectual Properties, LLC v. U.S.*, 714 F.3d 1311, 1315 (Fed. Cir. 2013), a patent examiner's restriction requirement is of limited value as a claim construction tool:

> We also do not assign much weight to the patent examiner's restriction requirement …. In making the restriction requirement, the examiner did not construe the claim term "fuel system component" or determine its meaning in light of the written description. He merely required that the applicant elect one aspect of his invention for prosecution without applying it to the specification.

*Honeywell v. ITT*, 452 F.3d at 1319.

As other courts have recognized, "[a] restriction requirement is generally considered an administrative tool for the purpose of case management, controlling filing and search fees, and facilitating administration in the PTO." *Colorquick, LLC v. Eastman Kodak Co.*, 2008 WL 5771324, at *8 (E.D. Tex. June 25, 2008) (collecting cases). Volcano could have added anything it liked to dependent claims, such as a cup or a pen, and the examiner likely would have asked for an election of these claims as well. That administrative fact does not expand "flexible element" to include cups, pens, or balloons.

Merely adding a balloon to a dependent claim does not mean that "flexible element" in the '647 and '648 patents now includes a balloon. As the district court noted, "[i]t is also difficult to believe, as Volcano argues, that a balloon can act as a flexible element within the meaning of the patents." (A11.) As the portions of the '648 patent cited by the district court state, the balloon is used as a dilation tool. (A11 (citing A26, col.8 ll.8-11, A27, col.10 ll.41-61, A28, col.11 ll.32-37).) The balloon is even claimed as a dilation tool in the '327 ancestor patent. (A11 (citing

A3400-16, claim 8).)  Just because an examiner asked Volcano to elect balloon,

coil, and tube claims to ease examination does not transform a dilation balloon into

a "flexible element."

The examiner did not state his or her view on the meaning of "flexible

element."  There is nothing in the record regarding the examiner's claim

construction, and the restriction requirement cannot broaden "flexible element"

beyond the scope of the invention in the written description.  The written

description discloses that the "present invention" requires a coil between the sensor

housing and the hypotube, and the coil is not an example—it is the *only* structure

shown in all embodiments described in the written description.  Therefore, the

district court correctly construed "flexible element" to mean "coil."

### B.     Alternatively, "Flexible Element" is a Means-Plus-Function Term Governed by § 112(f), and Corresponds to the Written Description's Coil

The district court correctly construed "flexible element" to mean a coil.  This

construction resolves infringement in St. Jude's favor and ends this case.  But this

Court can properly reach the same result by treating "flexible element" as a term

governed by § 112(f), as St. Jude argued below.

As explained above, the term "flexible element" is not a term in the

guidewire design art that denotes a particular structure or device.  It is instead a

generic term used by a patent attorney to encompass any structure that has the

function of being flexible. *See MIT*, 462 F.3d at 1354 ("The generic terms 'mechanism,' 'means,' 'element,' and 'device,' typically do not connote sufficiently definite structure."). Volcano did not claim a particular structure and instead wrote its claims to include any means for performing the function of flexibility. Accordingly, the claim term should be limited under 35 U.S.C. § 112(f) to cover only the structures disclosed in the written description. And the sole structure described in the '647 and '648 patents providing flexibility proximal to the sensor housing is a coil.

### 1. Claim Terms Must Recite Specific Structures

An inventor "must describe the exact scope of an invention and its manufacture to secure to the patentee all to which he is entitled, and to apprise the public of what is still open to them." *Markman v. Westview Instrs., Inc.*, 517 U.S. 370, 373-74 (1996) (internal citations omitted). Thus, the claims must "particularly point[] out and distinctly claim[] the subject matter which the inventor . . . regards as the invention." 35 U.S.C. § 112(b). To achieve this, a patentee must draft claims that put the public on notice of the structure of the device itself, not merely its function. *See generally Markman*, 517 U.S. at 373-74.

An exception is provided under 35 U.S.C. § 112(f), which allows a patentee to claim structures by referring to their functions. But "[i]n exchange for being able to draft a claim limitation in purely functional language, the applicant must

describe in the patent specification some structure which performs the specified function." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1318 (Fed. Cir. 2012) (internal quotations and citations omitted). Moreover, "the functional claim language covers only the corresponding structure, material, or acts described in the specification and equivalents thereof." *Id.* (internal quotations and citations omitted).

### 2. "Flexible Element" is Subject to § 112(f) Because the Claims Do Not Recite Enough Structure

"The generic terms 'mechanism,' 'means,' 'element,' and 'device,' typically do not connote sufficiently definite structure" to avoid means-plus-function treatment. *MIT*, 462 F.3d at 1354; *see also id.* at 1353 ("[A] limitation lacking the term 'means' may overcome the presumption against means-plus-function treatment if it is shown that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" (internal quotations omitted)). Accordingly, where a generic term like "element" is used with a function and is not associated with a particular structure in the art, the term is construed under § 112(f) to include only the corresponding structures disclosed in the written description. *See Mas-Hamilton*, 156 F.3d at 1214.

This Court's decision in *Mas-Hamilton* is almost directly on point. The disputed term was "moving element," and it "lacks a reasonably well understood

meaning in the relevant lock art." *Id.* The term "[was] drafted as a function to be performed rather than definite structure or materials." *Id.* at 1213. This Court observed: "If we accepted La Gard's argument that we should not apply section 112, ¶ 6, a 'moving element' could be any device that can cause the lever to move." *Id.* The Court thus held that § 112(f) applied: "La Gard's claim, however, cannot be construed so broadly to cover every conceivable way or means to perform the function of moving a lever, and there is no structure recited in the limitation that would save it from application of section 112, ¶ 6." *Id.*

Likewise here, the unrebutted evidence showed that the term "flexible element" had no common meaning in the guidewire design art, *supra*. And there is no indication in the record that "flexible element" connotes definite structure to a person of ordinary skill in the art. The written description of the invention in Volcano's patents does not even use the phrase "flexible element," never mind detailing components included in it. By combining the function "flexible" with the generic term "element," Volcano's patent attorney placed the claim squarely within § 112(f). This word combination "is not defined in the specification and has no dictionary definition." *MIT*, 462 F.3d at 1354 (holding, under similar facts, that "colorant selection mechanism" was a means-plus-function term). Yet accepting Volcano's argument would mean that a "flexible element" could be any device that

is flexible. *See Mas-Hamilton*, 156 F.3d at 1213. "Flexible element" is thus subject to § 112(f).

Other cases support the same conclusion. For example, in *Welker Bearing*, this Court addressed the claim term "mechanism for moving said finger." *Welker Bearing*, 550 F.3d at 1096. It held that § 112(f) applied to this term, because "the 'mechanism for moving said finger' language includes even less structural context than the 'colorant selection mechanism' in *MIT*." *Id.* "[O]ne of skill in the art would have no recourse but to turn to the '254 patent's specification to derive a structural connotation for the generically claimed 'mechanism for moving said finger....'" *Id*. And in *Aspex*, this Court ruled that "retaining mechanism" was a means-plus-function term. *Aspex*, 288 F. App'x at 703-04. This was because, similar to Dr. Durfee here, an expert "stated in his expert report that "'retaining mechanism' has no common meaning in the eyeglass industry," that he had no "mental picture of a specific structure when [he heard] the term," and "there is no indication in the record that 'retaining mechanism' connotes definite structure to a person of ordinary skill in the art." *Id.*

Volcano wrongly argued below that grammatical rules placed "flexible element" outside the analysis found in *MIT*, *Welker*, and *Aspex*. Volcano noted that in these cases, the preposition "for" follows the generic term. By contrast, Volcano's claims recite a "flexible element … with … an increased flexibility

- 49 -

relative to the long proximal hypotube." (A28-30 ('648 patent claims 1, 30, and 53).) But replacing "for" by "with" and describing the "increased flexibility" function using a noun instead of a verb effects no change in meaning. Volcano presses form over substance, yet nothing in *MIT*, *Welker*, or *Aspex* suggested that grammatical forms or preposition choice mattered. *Compare 3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315 (Fed. Cir. 2013) (rejecting grammatical rules).

Volcano also incorrectly contended there is enough structure in the claims because the "flexible element": (1) is "disposed between the long proximal hypotube and the short hypotube sensor housing"; (2) has "an outer diameter of 0.018" or less"; and (3) requires "an increased flexibility relative to the long proximal hypotube." These three phrases do not provide enough structure to avoid means-plus-function treatment.

First, Volcano's "disposed between" argument fails because merely identifying the relationship of the "flexible element" to other parts does not inform one skilled in the art of the structure of the flexible element itself. In addition, all means-plus-function elements in mechanical claims are disposed between other parts. For example, in *Mas-Hamilton*, the complete term was:

> a substantially non-resilient lever moving element for moving the lever from its disengaged position for engaging the protrusion of the lever with the cam surface on the cam wheel so that the rotation of the cam wheel thereafter in the given direction

changes the locking mechanism from the locked condition to the
unlocked condition.

*Mas-Hamilton*, 156 F.3d at 1213.  This Court held that the "moving element" was
subject to § 112(f) even though the claim described its relationship to the other
parts of the claimed machine.  *Id.*  Likewise, in *Aspex*, the Court ruled that
"retaining mechanism" was subject to § 112(f) even though the claim said the
mechanisms "define a frontal plane" and recited "a bridge connecting the two
retaining mechanisms and holding the two retaining mechanisms together."  288 F.
App'x at 703.

Second, defining an upper limit on the diameter of the "flexible element"
does not identify the structure itself.  Moreover, all guidewires are 0.018" or less.
(A23, col. ll.20-51; A24, col.4 ll.49-50 ("The portion of the guide wire **21** therefore
described is substantially conventional.").)  This limitation does not set a specific
size, but merely an upper limit that was standard in the art.

Finally, requiring that the "flexible element" have "an increased flexibility
relative to the long proximal hypotube" merely explains the functional term
"flexible."  It does not define structure, but instead covers anything that meets the
function of providing increased flexibility relative to the long proximal hypotube,
regardless of its structure.

Volcano also wrongly argued that the "balloon," "coil," and "hypotube
formed of a plastic material" terms in the dependent claims show that "flexible"

- 51 -

element" is not a means-plus-function term. But "flexible element" must have a meaning in each claim, because "each claim is a separate statement of the patented invention." *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1220 (Fed. Cir. 1995). It is common for means-plus-function terms in independent claims to have dependent claims calling out particular structures that fall within the independent claim's functional language. *See, e.g.*, *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991). But "the presence of another claim specifically claiming the disclosed structure which underlies the means clause or an equivalent of that structure" does not avoid the application of § 112(f). *Id.* Otherwise, "it would provide a convenient way of avoiding the express mandate of section 112(6)," and "one cannot escape that mandate by merely adding a claim or claims specifically reciting such structure or structures." *Id.* The dependent claims thus cannot excuse the applicant's failure to recite "sufficiently definite structure" for "flexible element."

### 3. "Flexible Element" is a not a Term Specially Defined To Include a Specific Structure Described in the Written Description

In some cases, this Court considered a claim term that was expressly defined in the written description of the invention. For example, in *Inventio*, the inventors created the term "modernizing device." *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 649 F.3d 1350, 1358 (Fed. Cir. 2011). "Modernizing" is not a function. Instead, the inventors defined "modernizing device" in their patent as an

assembly having a "processor, signal generator, converter, memory, and signal receiver elements." *Id.* at 1358. In *Inventio*, "the written descriptions depict the modernizing device and its internal components, namely, the processor, signal generator, converter, memory, and signal receiver elements." *Id.* (citing a figure of the patent asserted in that case). Thus, the term "modernizing device" is a shorthand for a particular device defined in the written description.

Likewise, this Court recently found that the term "heuristics" referred to structure because the written description "outline[d] the rules that the heuristics follow, based upon, for example, the initial angle of a finger contact, the number of fingers making contact, the direction of movement of a finger contact, a specific swiping gesture, taping a certain location on the screen, or the angle of movement of a finger on the screen." *Apple Inc. v. Motorola, Inc.*, --F.3d--, 2014 WL 1646435, at *9 (Fed. Cir. Apr. 25, 2014). Thus, "heuristics" was a shorthand for a definite structure described in the written description.

By contrast, the written description in Volcano's patents does not even use the phrase "flexible element," never mind detailing components included in it. By combining the function of being "flexible" with the generic term "element," Volcano's patent attorney placed the claim precisely in the form that courts have found merits § 112(f) treatment. This word combination is no different from

"colorant selection mechanism," which "is not defined in the specification and has no dictionary definition." *MIT*, 462 F.3d at 1354.

### 4. A Coil is the Sole Corresponding Structure in the Written Description

As explained above, the sole structure described in the written description of the invention that provides flexibility between the hypotube (a.k.a. "elongate tubular member") and the sensor housing is "coil spring **46**." (A24, col.3 l.32-col.4 l.28.) All figures showing embodiments of the "present invention," including figures 2-3, and 13-17, have a coil between the hypotube and the sensor housing. (A17; A21-22.) Figure 2 provides a "view of a guide wire incorporating an ultra miniature pressure sensor of the present invention," (A23, col.2 ll.34-36), and it illustrates a coil between the hypotube and the sensor housing. Thus, a coil is the only structure corresponding to a "flexible element … with an outer diameter of 0.018" or less and an increased flexibility relative to the long proximal hypotube."

## CONCLUSION

The district court correctly construed "flexible element." Because it is undisputed that St. Jude does not infringe any claim of the '647 and '648 patents under that construction, the district court's final judgment should be affirmed.

Dated:  June 9, 2014                    Respectfully submitted,


                                        */s/ Stuart E. Pollack*


Stuart E. Pollack                       John Allcock
Nika Aldrich                            Stanley J. Panikowski
DLA PIPER LLP (US)                      DLA PIPER LLP (US)
1251 Avenue of the Americas             401 B Street, Suite 1700
New York, NY 10020                      San Diego, CA 92101-4297
(212) 335-4500                          (619) 699-2700

                                        *Attorneys for Defendants-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this **RESPONSE BRIEF FOR DEFENDANTS-APPELLEES** with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on June 9, 2014.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  June 9, 2014                    */s/ Stuart E. Pollack*_____
                                        Stuart E. Pollack

## CERTIFICATE OF COMPLIANCE
## UNDER FED. R. APP. P 32(a)(5), (6), and (7)

I hereby certify that this brief complies with the limit of 14,000 words imposed by Fed. R. App. P. 32(a)(7)(B).  The brief contains 12,561 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b), calculated by the word count of the word processing system used in preparing it.

I hereby also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Dated:  June 9, 2014

*/s/ Stuart E. Pollack*
Stuart E. Pollack
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500

*Attorneys for Defendants-Appellees*